UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:14-cv-22919-MGC/Torres

LA LEY RECOVERY SYSTEMS-OB,
INC. a/a/o Whole Health Chiropractic
and Wellness,

        Plaintiff,

v.

UNITEDHEALTHCARE INSURANCE
COMPANY,

        Defendant.
_____/

**DEFENDANT UNITED HEALTHCARE INSURANCE COMPANY'S
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant, UNITEDHEALTHCARE INSURANCE COMPANY ("United"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Complaint because the claims are completely preempted and governed exclusively by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. In support of this motion, United states as follows:

**I.    INTRODUCTION**

Plaintiff LA LEY RECOVERY SYSTEMS-OB, INC. ("La Ley"), is a collections company. Defendant United is the claims administrator of a self-funded health plan sponsored by American Airlines for its employees.

La Ley filed this action in state court as a result of United's denial of medical expense benefits for chiropractic services allegedly rendered by a provider named Whole Health Chiropractic and Wellness ("WHCW"). La Ley is proceeding on the basis of an alleged

assignment obtained from the chiropractor WHCW. According to La Ley, it "has the right to pursue all available causes of action legal and equitable, vested in the medical provider, [WHCW], and proceed against [United] and/or prosecute the referenced causes of action against any party/entity responsible to make payments to [WHCW] for the value of the services rendered to the patient/insured." Complaint at ¶9.

This action challenges the administration of benefits under an ERISA-governed plan. Despite La Ley's artful pleading under state law theories of relief, La Ley leans on the terms of an ERISA-governed plan as the source of the underlying payment obligation. La Ley contends that United "breached its obligations [under] . . . **the insurance contract between [itself] and the insured**," when United did not pay the chiropractic benefits that form the basis of this controversy. Complaint at ¶7 (emphasis added). This "insurance contract" is more accurately referred to as the employee welfare benefit plan that Univision sponsors.

As La Ley recognizes, the health plan that covers the patient is "**the pertinent health [plan]**" that allegedly "obligates" United to pay for the chiropractic services in question. Complaint at ¶8 and ¶20 (emphasis added). Given how "pertinent" the plan document is to the recovery that is sought, La Ley cannot run from the ERISA plan in an effort to avoid complete preemption. That is especially true where La Lay directs the court to the terms of that very plan. Nor can La Ley avoid the force of the complete preemption doctrine by expressly disclaiming any relief "under Section 502 of ERISA." Complaint at ¶15. The Eleventh Circuit has made clear that such disclaimers are ineffective to avoid preemption. *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1303 (11th Cir. 2010) (rejecting as "unavailing" the effort by provider plaintiffs to expressly disclaim causes of action under ERISA in their state-law Complaint as a means of trying to escape ERISA's complete preemptive effect). By alleging that

2

the patient "was eligible for benefits . . . under the pertinent provisions of the [plan]," and by insisting that benefits were wrongfully withheld "under the pertinent subject contractual provisions" of the plan, La Ley has pled claims that fall within ERISA's exclusive purview. Complaint at ¶23 and ¶31. As a result, the state-law Complaint must be dismissed.

## II.  SUMMARY OF ALLEGATIONS

La Ley announces in no uncertain terms that its Complaint "arises out of [United's] breach of its common law duties **under the applicable health insurance contract**." Complaint at ¶7. As set forth more fully in United's Notice of Removal, D.E. 1, the "contract" that is central to this action is an employee welfare benefit plan within the meaning of ERISA.[1]

According to the Complaint, the health plan "contractually obligates" United to pay for medical/health care services rendered to persons who are enrolled in that plan. Complaint at ¶20. As La Ley explains, the chiropractor WHCW "rendered medical services and treatment to [the patient C.D.F]."[2] Complaint at ¶22. At the time those services were rendered, C.D.F was allegedly "eligible for benefits and was otherwise covered under the pertinent provisions" of the health plan. Complaint at ¶23. The chiropractic services are said to be "medically necessary" for the patient and WHCW "submitted the bills for the subject medical services to [United]" for payment. Complaint at ¶25 - ¶26. Despite submitting bills to United, neither La Ley nor WHCW has received payment. Complaint at ¶27. La Ley has been assigned the right "**to**

---

[1] The self-funded ERISA plan document may be reviewed by this Court on this motion to dismiss. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, et al., 116 F.3d 1364, 1668-69 (11th Cir. 1997) (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993) and noting that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). The American Airlines plan document has been furnished previously in conjunction with United's Notice of Removal, at D.E. 1-2, commencing at page 6 of 291.

[2] Although La Ley has included the full name of the patient on the face of its Complaint, United will use only the patient's initials C.D.F. throughout this motion in the interest of protecting the patient's privacy.

**collect benefits**" from United. Complaint at ¶29 (emphasis added). By virtue of that assignment, La Ley contends it is "legally entitled" to pursue those benefits. Complaint at ¶30. La Ley claims that when United "fail[ed] to make timely payment for the services" in question, United "violated its common law duties **under the pertinent subject contractual provisions**" of the plan. Complaint at ¶31 (emphasis added).

By definition, the claim in Count I for Breach of Contract is aimed directly at enforcing the terms of the health plan. There can be no resolution of that claim without considering the provisions of the plan. For instance, if (contrary to the allegations) the patient C.D.F. was *not* "eligible for benefits" or that patient C.D.F. was *not* "otherwise covered under the pertinent provisions of the insurance contract," then no "breach" may be found. Thus, Count I cuts to the core of why this action implicates ERISA. It is a claim to obtain benefits that - according to La Ley - are required *by the terms of the plan.*

But Count I is not the only claim that depends on the terms of the ERISA plan. In Count II, where La Ley purports to state a claim for breach of oral contract, La Ley claims the chiropractor WHCW contacted United before WHCW rendered services "to confirm coverage of the patient and for the subject services **under the subject health plan**." Complaint at ¶33 (emphasis added). Similarly, in Count III where La Ley attempts to plead a claim for breach of implied contract, La Ley describes a contractual promise that United made to pay for medical services "in exchange for" the payment of premiums which are required to keep the coverage in force. Complaint at ¶41. La Ley alleges that United received a benefit once the services were rendered to the patient "**based on the patient's policy with [United].** Complaint at ¶42 (emphasis added). Likewise, in Count IV, La Ley invokes the state law theory of quantum meruit while alleging the same benefit "**based on the patient's policy with [United].**"

Complaint at ¶51 (emphasis added). La Ley's final two claims in Counts V and VI for open account and account stated rest on the existence of the health plan, absent which there would be no reason for the open or the stated "account" in the first place.

Finally, and perhaps most telling, La Ley ends each and every count with a request for attorney's fees "as per Florida Statutes 641.28." Although this Florida Statute has no application to a self-funded ERISA plan,³ the fact that La Ley invokes it throughout its Complaint serves notice of La Ley's true objective – to enforce *the health plan*. The (inapplicable) Florida statute provides that "[i]n any civil action **brought to enforce the terms and conditions of a health maintenance organization contract**, the prevailing party is entitled to recover reasonable attorneys' fees and court costs." (emphasis added). As one Florida appellate court succinctly put it, "section 641.28 is limited to only those suits 'brought to enforce' the provisions of a managed care plan." *Long v. AvMed, Inc.*, 14 So.3d 1264, 1265 (Fla. 1st DCA 2009). La Ley's reliance on Florida Statute 641.28 highlights the extent to which this entire action really depends on the terms and conditions of the applicable ERISA plan. Lay Ley cannot argue on the one hand that its claims are independent of the American Airlines ERISA plan, while simultaneously demanding attorneys' fees under a statute that only makes them available in actions to enforce the terms of the underlying health plan.

---

³ Self-funded ERISA plans, such as the American Airlines plan involved in this case, are not considered to be in the business of "insurance." The Supreme Court has held that any state laws regulating insurance are preempted by ERISA and may not be applied to self-funded plans. *FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("State laws that directly regulate insurance ... do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies."); *See also, America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1334, n. 18 (11th Cir. 2014) (Georgia prompt pay laws are preempted and may not be applied to self-funded ERISA plan because "state insurance regulation of self-insured ERISA is not allowed by operation of the Deemer Clause."); *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1356 (11th Cir.1998) (self-funded ERISA plan is exempt from state statute).

III.  **ARGUMENT**

      **La Ley Seeks To Challenge The Administration of the ERISA Plan And Therefore Its State Law Claims Are Completely Preempted by the Act.**

Complete preemption exists where "Congress 'so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002), *citing Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Section 502 of ERISA, 29 U.S.C. § 1132(a), is one such statute which completely preempts state law claims involving rights of participants and beneficiaries to recover benefits under employee welfare benefit plans. *See Taylor*, 481 U.S. at 63-66, 107 S.Ct. 1542.

As set forth in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the preemptive force of § 502 of ERISA is especially broad.

> Congress clearly expresses an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.

*Id.* at 52, 107 S.Ct. at 1555. Examining the structure of ERISA's text and the legislative history, the Court concluded that:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. **The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.**

*Id.* at 54, 107 S.Ct. at 1556 (emphasis added). Thus, ERISA contains a carefully crafted and comprehensive civil enforcement mechanism that reflects policy choices by Congress to provide very specific and exclusive types of civil enforcement remedies in the ERISA context.

The Supreme Court reaffirmed the validity of *Pilot Life* in *Aetna Health Inc. v. Davila*, --- U.S. ----, ----, 124 S.Ct. 2488, 2494, 159 L.Ed.2d 312 (2004) (re-emphasizing the teachings of *Pilot Life* while concluding that any state law will be preempted by Section 502 "if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme."). The *Davila* Court clarified the doctrine of complete preemption of claims under § 502 of ERISA and phrased the test as follows:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). **In other words, if an individual, at some point in time could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B).**

*Davila*, 124 S.Ct. at 2496 (citation omitted) (emphasis added). Thus, under the *Davila* analysis, a state law claim is completely preempted by ERISA if: (1) the plaintiff, at some point in time, could have brought the claim under ERISA's civil enforcement provision, and (2) the state law cause of action is "not entirely independent of the federally regulated [ERISA plan] itself." *Id.*

The threshold question presented by the *Davila* test is whether a plaintiff has standing to assert a claim under ERISA's civil enforcement provision. As set forth in § 502(a)(1)(B), an action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the plan, to enforce rights under the plan, or to clarify rights to future benefits under the

7

terms of the plan. *See* § 502(a)(1)(B). By its own account, La Ley has standing to pursue plan benefits. *See* Complaint at ¶8, ¶9 and ¶29 (alleging its "beneficiary" status under the patients' benefit plans). Moreover, as it represented on the Claim Form submitted to United in order to request the payment of benefits under the plan, the chiropractor WHCW accepted an assignment from its patient. *See* D.E. 1-2, pgs 290-91; *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (healthcare provider has derivative standing to bring an action against an ERISA plan insurance fund where patient assigns the right to payment of medical benefits); *see also Connecticut State Dental Ass'n*, 591 F.3d 1337, 1352-54 (11th Cir. 2009) (recognizing the right of the defendant health plan to rely on representations of assignments contained within standardized health insurance Claim Forms to demonstrate complete preemption).

Rather than proceed in its own name, WHCW assigned its right to collect benefits to La Ley. This secondary assignment equips La Ley with standing to sue under ERISA. *Tango Transport v. Healthcare Financial Services*, 322 F.3d 888, 891 (5th Cir. 2003) ("Because ERISA-governed welfare plans are alienable, to hold that the original participant can alienate them, but that a subsequent assignee cannot, would make little sense. It is likewise nonsensical for an original health care provider assignee to receive both welfare benefits and the right to enforce them via derivative standing, but a subsequent assignee can receive only the benefits, but not the right to sue to enforce them.").

The second element for complete preemption under § 502(a) – the absence of any independent legal duty supporting the state law claim – is also satisfied. *See Davila*, 124 S.Ct. at 2496. In determining whether a legal duty is entirely independent of an ERISA plan, the analysis rests on whether the alleged liability is derived from or dependent upon the existence and administration of an ERISA regulated benefit plan. *See Id.* at 2498.

In *Davila*, a participant and a beneficiary in an ERISA regulated employee benefit plan sued their HMOs for failing to exercise ordinary care with respect to certain coverage decisions, in alleged violation of the Texas Health Care Liability Act ("THCLA"). *See Id.* at 2492-93. The plaintiffs maintained that the defendants' refusal to cover requested services violated the "duty to exercise ordinary care when making healthcare treatment decisions" and that the statutory violation proximately caused their injuries. *Id.* at 2493. The Fifth Circuit Court of Appeals determined that the plaintiffs' THCLA claims were not duplicative of any ERISA cause of action and thus were not preempted by ERISA. *See Id.* at 2494.

In reversing the Fifth Circuit, the Supreme Court noted that § 502(a) of ERISA constituted an "integrated enforcement mechanism" which was "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* The Court further noted that, as set forth in *Pilot Life*, "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* at 2495.

Finally, in concluding that the plaintiffs' claims were "completely preempted" by ERISA, the Supreme Court held that the duties imposed by THCLA did *not* arise independently of ERISA or the plan terms because the interpretation of the subject benefit plans formed an essential part of the plaintiffs' statutory claims and such liability existed only because of the defendants' administration of the ERISA plans. *Id.* at 2498. Thus, the Supreme Court determined the plaintiffs' claims were not entirely independent of the federally regulated contract. *Id.* The Court noted that, in essence, the plaintiffs were simply seeking to remedy "denials of coverage promised under the terms of the ERISA-regulated employee benefit plans"

9

which could have been addressed through § 502(a)(1)(B) and did not "attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 2497-98.

Here, Count I alone shows there is no "independent legal duty" that supports entitlement to any relief. The "contractual" duty that frames Count I is rooted in the ERISA plan itself. There are various allegations throughout the Complaint which demonstrate the La Ley is *not* proceeding under a contractual theory that is truly *in*dependent of the ERISA plan. In fact, as its general allegation makes clear, the entire action "arises out of [United's] breach of its common law duties under the applicable health [plan]."

In *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296 (11th Cir. 2010), the Eleventh Circuit concluded that providers' state law claims which challenged the failure of the health plans to pay were completely preempted by ERISA. Significantly, the *Borrero* court found complete preemption *despite* the medical providers' attempt to "undermine their own standing" by "disclaiming [their reliance] on the assignments of benefits" by their patients. *Borrero*, 610 F.3d at 1303. The plaintiffs in *Borrero* went so far as to allege on the face of their Complaints that they did "not otherwise seek benefits or other remedies under [ERISA]." *Id.* The Eleventh Circuit rejected the plaintiffs' "attempt to characterize their claims as eluding the scope of ERISA," and found instead that "the factual allegations raise precisely the type of ERISA determinations that trigger complete preemption and convert the otherwise state law claims into federal claims." *Id.* Notwithstanding the plaintiffs' efforts to distance their claims from the ERISA plans, the court found the claims were "substantially dependent upon interpretation" of those plans. *Id.* Relying on *Connecticut State Dental* and the teachings of *Davila*, the Eleventh Circuit looked to "the content of the [physicians'] claims" which

necessarily required an examination of the terms of the ERISA plans in order to determine the rights of the parties. *Id.* at 1304-05.

In both *Connecticut State Dental* and *Borrero*, the plaintiff medical providers had entered into written contracts to participate in the plans' network of physicians. In both cases, the contracted providers argued vigorously that their claims were entirely *in*dependent of the ERISA plans because they were seeking to remedy violations of their own Provider Agreements under traditional state and common law claims. Yet the Eleventh Circuit looked beyond the labels of the claims to understand that the providers' allegations necessarily required a reviewing court to consider whether a duty *under the ERISA plan* had been violated. Here, there is no written agreement between the Plaintiff and Defendant. If the claim of a provider with his own *written* contract could not escape preemption based on the allegations of the Complaints in *Connecticut State Dental* and *Borrero*, then surely the claim of a non-network chiropractor (which in turn was assigned to a collections company) cannot escape preemption. The non-network chiropractor has no connection to the Defendant *other than* the ERISA plan that provides benefits (for covered services) to the patient.

The content of the claims in this case reveal that La Ley has placed the terms of the underlying health plan squarely at issue. This is a quintessential contest over the right to coverage under the American Airlines plan. To ignore or minimize the ERISA plan, as La Ley urges, is to destroy a fundamental purpose of ERISA in achieving uniformity in the law that governs employee welfare benefits. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987) (One of the primary purposes of ERISA and for providing for pervasive federal preemption is to ensure uniformity of administration to protect participants and beneficiaries from the threat of conflicting and inconsistent state regulation).

Finally, courts recognize that plaintiffs cannot seize upon purported oral confirmations of coverage to manufacture duties that are supposedly "independent" of the ERISA plan. For example, in *Montefiore Med. Center v. Teamsters Local 272*, 642 F.3d 321 (2nd Cir.2011), the Second Circuit held that phone conversations between the ERISA insurer and a medical provider as to patient coverage did not create a separate duty because *the plan* contemplated the pre-approval process. In other words, the very act of confirming coverage was a by-product of the plan and its provisions. *Id.*, at 332 ("Whatever legal significance these phone conversations may have had, . . . they did not create a sufficiently independent duty under *Davila* — indeed, as Montefiore concedes, this pre-approval process was expressly required by the terms of the Plan itself and is therefore inextricably intertwined with the interpretation of Plan coverage and benefits.").

It is not unusual for a physician's office to contact the health plan "to confirm coverage of the patient and for the subject services under the subject health plan," as the Complaint in this case alleges at paragraph 33. But that exercise is inherently tied to the terms and conditions of the plan, when the purpose of the call is to confirm the patient is enrolled in the health plan at the time of service, and inquire if the anticipated service will be eligible for payment. In fact, the American Airlines plan allows participants and their physicians to call the claims administrator before rendering a service in order to inquire if the recommended service or treatment is covered. The plan refers to this process as "CheckFirst (Predetermination of Benefits)." *See* D.E. 1-2 at pg. 68. As the plan indicates, even where the CheckFirst procedure is utilized by physicians, "payment of a claim depends upon the amount and type of coverage available at the time the claim is submitted, and the claim is still subject to all provisions, limitations, and exclusions of the Plan(s) (such as eligibility and enrollment requirements, coverage rules, benefit

12

amounts and maximums, etc.)." *Id.* Thus, the act of contacting the plan "to confirm coverage" cannot be detached from the plan itself. That act, especially where the plan contemplates it, triggers duties, obligations and administrative steps that are all part of the plan's administration. The communication is necessarily and "inextricably intertwined with the interpretation of Plan coverage." *Montefiore*, 642 F.3d at 332.

Congress has made clear its intent of creating a uniform enforcement scheme that preempts any state-law cause of action that "duplicates, supplements, or supplants" an ERISA remedy. *See Davila*, 542 U.S. at 209, 124 S.Ct. 2488. All of the state-law claims that frame the Complaint, including the quasi-contract claims of implied contract and quantum meruit, fail to establish an independent duty under *Davila*. La Ley's claims all center on the fact that medical services were provided to an American Airlines plan participant, and despite the submission of a claim for benefits to the plan's third party claims administrator, no benefits were paid. As in *Davila*, any determination of liability under the proposed state-law theories of relief would require a review of the pertinent ERISA plan to determine if benefits are available. Since there is no other *separate* contract between the parties that could establish the availability of benefits, preemption is required. Under the Supreme Court's two-part test in *Davila* and the Eleventh Circuit's reasoning in *Connecticut State Dental Association and Borrero*, La Ley's state-law Complaint is completely preempted by ERISA.

## IV. CONCLUSION

La Ley's claims constitute an impermissible attempt to circumvent ERISA and obtain benefits outside of ERISA's remedial scheme. However, as the Supreme Court cautioned in *Davila*, "a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA

13

mechanism exclusive." *Davila*, 124 S.Ct. at 2498, n. 4 *citing Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Plaintiff's claims "directly conflict with ERISA's requirements that plans be administered and benefits be paid, in accordance with plan documents." *Egelhoff v. Egelhoff ex rel Breiner*, 532 U.S. 141, 150, 121 S.Ct. 1322, 1324-25, 149 L.Ed.2d 264 (2001).

WHEREFORE, Defendant UNITEDHEALTHCARE INSURANCE COMPANY respectfully requests that this Court enter an order granting the motion to dismiss and awarding any other relief this Court deems just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2014, I have electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on: **Monica Lorie Holden, Esquire**, La Ley Law Firm, 2332 Galiano Street, Second Floor, Suite 214, Coral Gables, Florida 33134, telephone: (305) 461-6006, emails: serve@laleylawfirm.com; mlholdenpa@att.net; mlhpa@att.net, *counsel for Plaintiff*, in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

          s/ Daniel Alter
          Daniel Alter, FBN 0033510
          Email: dan.alter@gray-robinson.com
          Shari Gerson, FBN 017035
          Email: shari.gerson@gray-robinson.com
          Jeffrey T. Kuntz, FBN 26345
          Email: jkuntz@gray-robinson.com
          Evan D. Appell, FBN 58146
          Email: evan.appell@gray-robinson.com
          GRAY ROBINSON, P.A.
          401 East Las Olas Boulevard, Suite 1000
          Fort Lauderdale, Florida 33301
          Telephone: (954) 761-8111
          Facsimile: (954) 761-8112
          *Counsel for Defendant*