```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2                      MIAMI DIVISION

 3       CASE NOS.: 14-22919 -23303 -23431 -23443,-23499,
              -23534 -23544, -23572 -23684-civ-COOKE
 4

 5

 6  LA REY RECOVERY SYSTEMS-OB, )
    INC., et al.,               )
 7                              )
             Plaintiffs,        )              Miami, Florida
 8  v.                          )
                                )              October 14, 2014
 9  UNITED HEALTHCARE INSURANCE )
    COMPANY, et al.,            )
10                              )
             Defendant.         )              Pages 1 - 41
11  _____ )

12

13

14                       MOTION HEARING
              BEFORE THE HONORABLE MARCIA G. COOKE
15               UNITED STATES DISTRICT JUDGE

16

17  APPEARANCES:

18  For the Plaintiffs:        LAW OFFICES OF LA LEY CON JOHN RUIZ
                               5000 SW 75th Avenue,
19                             Suite 400,
                               Miami, FL 33155
20                             BY:  JOHN RUIZ, ESQ.

21

22  For the Defendant          HOLLAND & KNIGHT, LLP
    Blue Cross Blue Shield     50 North Laura Street,
23                             Suite 3900,
                               Jacksonville, FL  32202
24                             BY:  TIMOTHY CONNER, ESQ.

25
```

```
 1

 2  APPEARANCES CONTINUED:

 3

    For the Defendant
 4  United Health Care:          GRAY ROBINSON, P.A.
                                 401 E Las Olas Boulevard,
 5                               Suite 1000,
                                 Fort Lauderdale, FL 33301
 6                               BY:  SHARI GERSON, ESQ.
                                 BY:  DANIEL ALTER, ESQ.
 7

 8
    For the Defendant
 9  Cigna Health and Live:       STEARNS WEAVER MILLER
                                 WEISSLER ALHADEFF, ET AL
10                               150 W Flagler Street,
                                 Suite 2200
11                               Miami, FL 33130
                                 BY:  SUSAN TOEPFER, ESQ.
12

13

14  Court Reporter:             Bonnie Joy Lewis, R.P.R.
                                7001 SW 13 Street,
15                              Pembroke Pines, FL  33023
                                954-985-8875
16                              caselawrptg@gmail.com October 14th

17

18

19

20

21

22

23

24

25
```

```
 1              (Thereupon, the following proceedings were held:)
 2         THE COURT:  All right.  We have a lot of matters before us
 3  today, but I think I am going to start out with letting everybody
 4  state their appearances.
 5         Who is appearing in Case Number 23303?  Would you state
 6  your appearances for the plaintiffs.
 7         MR. RUIZ:  Your Honor, good morning.
 8         Would it please the Court.  John Ruiz on behalf of La Ley
 9  Recovery Systems.
10         THE COURT:  So you are the attorney in all the cases?
11         MR. RUIZ:  That is correct, Your Honor.
12         THE COURT:  All right.  So who is appearing on behalf of
13  Blue Cross Blue Shield in Case 22303?
14         MR. CONNER:  Good morning.  Tim Conner with Holland and
15  Knight.
16         THE COURT:  And who is appearing for United Health Care in
17  23431?
18         MS. GERSON:  Good Morning.  Shari Gerson on behalf of
19  United Health Care and my partner Daniel Alter with United Health
20  Care as well.
21         THE COURT:  Who is appearing on behalf of Cigna Health and
22  Life?
23         MS. TOEPFER:  Susan Toepfer with Stearns Weaver Miller.
24         THE COURT:  I'm sorry.  Your last name again?
25         MS. TOEPFER:  Toepfer.
```

1           THE COURT:  Appearing on behalf of Aetna?

2           MR. ALTER:  Your Honor, Daniel Alter and Shari Gerson are

3   here on behalf of Aetna.

4           THE COURT:  And is there a separate counsel for Blue Cross

5   Blue Shield of North Carolina, or are you representing Blue Cross

6   Blue Shield of Florida as well?

7           MR. CONNER:  Your Honor, I'm not aware of the names of

8   counsel for Blue Cross Blue Shield of North Carolina and there's

9   another matter that is Blue Cross Blue Shield of Illinois.

10          THE COURT:  Are you counsel of record in 23534?

11          MR. CONNER:  Well, hold on a minute, Your Honor.  Let me

12  get my cheat sheet.

13          Originally that lawsuit was filed against Blue Cross Blue

14  Shield of Florida.  It was an ERISA case that filed a Motion to

15  Dismiss, but it was subsequently amended this past weekend to drop

16  Blue Cross Blue Shield of Florida and name Blue Cross Blue Shield of

17  North Carolina.  I am not counsel for Blue Cross Blue Shield of

18  North Carolina.  They're a separate entity, Your Honor.

19          THE COURT:  So no one is here representing Blue Cross in

20  23534 if it's North Carolina?

21          MR. CONNER:  Correct.

22          THE COURT:  Now, let me ask this question, Counsel.  The

23  amendment, was it within the amendment ripe period or after?

24          MR. CONNER:  Your Honor, I believe that this is the first

25  amendment and we had filed a Motion to Dismiss.

1          And so, as I understand the rule, an amended complaint

2     could be filed at any time prior to an answer being filed.

3          THE COURT:  Let me ask the law clerk.

4          23534, is that an amendment as ripe within the Defendant's

5     time period?

6          They are much quicker at accessing these docket sheets than

7     I am.  They have magic fingers.

8          MR. CONNER:  Okay.

9          THE COURT:  While they do that, Mr. Conner, are you counsel

10    of record in 23534, Blue Cross Blue Shield of Florida doing business

11    as Florida Blue?

12         MR. CONNER:  Your Honor, 23534 I appeared for Blue Cross

13    Blue Shield Florida, but they have been dropped from the case.

14    That's the one that names Blue Cross Blue Shield of North Carolina.

15         THE COURT:  Okay.  So those are the two cases and we can

16    figure out where you are there.  That means are you counsel of

17    record in 23572?

18         MR. CONNER:  Same as the other case, Your Honor.

19         I originally removed the case that appeared for Florida,

20    but the complaint was amended to name Blue Cross Blue Shield of

21    Illinois.

22         THE COURT:  So that one now says Illinois?

23         MR. CONNER:  Yes.

24         THE COURT:  All right.  Let's go to 23684.  That's the

25    United Health Care.

1        MS. GERSON:  Shari Gerson from Gray Robinson on behalf of

2  United Health Care.

3        THE COURT:  All right.  I think I have appearances, but we

4  are going to try to find out where everybody is.

5        Okay.  I want to talk specifically about -- and this may be

6  putting the cart before the horse -- the parties, everybody may be

7  seated now.

8        I want to talk to the parties in 22919 and 23303 because it

9  appears, if we have done our math, Mr. Conner is representing Blue

10 Cross and United Health Care that your Motions to Dismiss are ripe.

11       Am I wrong?

12       MR. CONNER:  With respect to 23303, Your Honor, yesterday

13 we filed our opposition to their Motion to Remand.  Of course, I

14 have a response that they could have filed.  We also, I believe, the

15 Motion to Dismiss is ripe.

16       THE COURT:  Let me start, Mr. Conner -- and you may

17 approach the podium -- let me start with the Motion to Dismiss

18 because even if they are not yet ripe in your case, the law may be

19 transferrable, as they like to say in the Social Security cases.

20       MR. CONNER:  Your Honor, would you like for me to come to

21 the podium?

22       THE COURT:  Please.

23       MR. CONNER:  So Your Honor, this is Case 23303 and on our

24 Motion to Dismiss, which I think is ripe or close to being ripe --

25       THE COURT:  No.  I think your Motion to Dismiss in this

1 case is ripe.

2      MR. CONNER:  Okay.  It's very similar in terms of legal

3 argument to the Motion to Remand.  And the basis of the motion there

4 are a few arguments to be made.

5      The first argument is that this case is governed by ERISA.

6 And therefore, ERISA preempts the state law claims that have been

7 pled in the complaint, basically, turning them into federal claims

8 under ERISA.

9      THE COURT:  So if it is -- and I am certain you are

10 prepared to go through the ERISA steps -- the preempted steps.

11 Excuse me.  If it is completely preempted -- meaning these cases and

12 as counsel for the Plaintiff wants to say its brother and sister

13 cases which will number in the thousands -- if it is completely

14 preempted, what does granting the Motion to Dismiss do in terms of

15 procedural posture in the case and what would be the next steps?

16      MR. CONNER:  Granting our motion, Your Honor, would in the

17 ordinary course of the way these work, is if it is preempted by

18 ERISA, the Motion to Dismiss is granted with leave for the Plaintiff

19 to amend to plead the claims under ERISA.

20      At that point, once that pleading has occurred and you

21 know, all the usual motions that might get directed to it are

22 resolved, the case would proceed on an administrative record

23 regarding the claims at issue.

24      So we would file, presumably, papers that would be an

25 agreed administrative record.  There would, then, ordinarily be

1  cross motions for summary judgment on the legal issues that that

2  administrative record presents.  And so that's how the case would

3  ordinarily proceed.

4        THE COURT:  So tell me why, since this is the Plaintiff's

5  argument, this is merely a contract action.  You know, I contracted

6  to have X provide me Y and it did not get provided.

7        So given the fact that the preemption doctrine requires a

8  complete preemption, why are these cases completely preempted by

9  ERISA and should all be in federal court appearing on the

10 administrative record and not simply a state law contract action?

11       MR. CONNER:  So Your Honor, out of the grouping of cases

12 that have been filed, not all cases have been removed.  Just the

13 ones that go to the interpretation of a health plan that is governed

14 by ERISA.

15       THE COURT:  Are all heath plans governed by ERISA?

16       MR. CONNER:  No, Your Honor.

17       THE COURT:  So why are these unique?

18       MR. CONNER:  These are, the cases in front of you, is a

19 self-funding group plan, which is the very thing that ERISA is

20 intending to govern.

21       There are certainly exceptions to certain group plans that

22 are not governed by ERISA, but this one is.  This one is a plan that

23 is clearly governed by ERISA.  We filed an affidavit that indicated

24 here's a copy of the plan.  The plan clearly states that it's an

25 ERISA plan.

1      THE COURT:  Plaintiff's argument on that ground is, listen,

2  in order to remove, you have to look at the face of the complaint.

3  And they are saying on the face of our complaint we are a contract

4  action.

5      MR. CONNER:  So Your Honor, in ERISA law there is a

6  doctrine called super preemption.  And under super preemption, the

7  face of the Plaintiff's complaint is relevant, but it is not

8  determinative of whether ERISA governs.

9      And the reason is because when Congress enacted ERISA, part

10  of the intent behind that was to create a uniform law so that state

11  law claims would be preempted by the statute and basically be

12  subject to a federal body of law.

13      Under those circumstances, what happens is, they complete

14  state law claims in state court, but if we meet the standard for

15  ERISA preemption, those claims are effectively converted into

16  federal claims under the ERISA statute.  And so that's why the well

17  pleaded complaint rule is not applicable in this type of case.

18      I would direct Your Honor to a couple of different cases

19  that discuss this.  There's a lot of ERISA case law and there's a

20  lot of case law discussion about this issue, but there are three

21  relatively recent cases that delve into these issues in some detail.

22  The first one is United States Supreme Court case that we have cited

23  in our papers called *Davila v. Etna*.  That is from 2004.  That was a

24  unanimous decision by the Supreme Court.

25      In that case, there were two cases that were consolidated.

1    Both of the individuals had brought state law claims under a Texas

2    statute against their HMOs and said they violated the statute.  It

3    was removed to federal court.  The district court judge there denied

4    the Motion to Remand and said this is governed by ERISA.

5         It went to the Fifth Circuit and in the Fifth Circuit the

6    Court of Appeals reversed and said, no, we think these claims are

7    independent of ERISA and, therefore, should be allowed to proceed to

8    state court.

9         That, then, made its way up to the Supreme Court.  And the

10   Supreme Court in the Davila case made it very clear how broad the

11   preemption is, the scope of preemption.  As I said, that was a

12   unanimous decision.  That case sets out the test that you have to

13   apply in determining whether a case is completely preempted and,

14   therefore, removable to this court.

15        The second case that I would point out to you came in 2009

16   from the Eleventh Circuit, Connecticut State Dental.  We've also

17   cited that.  And that case has a lengthy explication of the claim

18   and, ultimately, concluding that the claims in that case were

19   completely preempted.

20        And in the third case, which we had also cited in our

21   papers is Borrero.  That is a case that was decided by the Eleventh

22   Circuit as well following the Connecticut State Dental case.

23        Borrero was very similar to what the Plaintiff has

24   attempted to do here with respect to pleading its claims in state

25   court.  And in that case, the Eleventh Circuit looked at the types

1 of claims being pled.  As I said, it is very similar to what is

2 being pled here.  And said, we understand that these are state

3 claims being pled.  We understand that the Plaintiff is disclaiming

4 any rights under ERISA and that they intend to proceed under ERISA,

5 but those are legal conclusions.

6          And we, as a court, have to look at what is actually

7 involved, what is at issue in the case, in order to reach the

8 appropriate legal conclusion.  And in that case, after looking at

9 what was being alleged and, basically, coming to the understanding

10 that the claims implicated ERISA plans, the Court said these claims

11 are completely preempted and this case belongs in federal court.

12          THE COURT:  So if I follow the test that you described from

13 Davila, how do the plans in these cases meet the Davila test?

14          MR. CONNER:  So in the Davila test, which has been applied

15 by the Eleventh Circuit in the other two cases.

16          THE COURT:  And that's Borrero and Connecticut State

17 Dental?

18          MR. CONNER:  Yes, Connecticut State Dental.

19          THE COURT:  Okay.

20          MR. CONNER:  The first prong that you look at is whether

21 the Plaintiff could have brought the claims under ERISA.

22          The second prong is whether the claims that the Plaintiff

23 intends to assert in state court are completely independent from

24 ERISA.  If they are not completely independent, then they're

25 preempted.

```
 1          THE COURT:  So why is an action, assigned action for

 2   nonpayment why is that a preemption?  What is unique about it in

 3   theses plans?

 4          MR. CONNER:  So in these plans, we start off first of all

 5   with its unquestioned that the plan at issue is an ERISA plan.

 6          THE COURT:  Because?

 7          MR. CONNER:  Because it's a self-funded group health plan

 8   that falls under the auspices of ERISA.

 9          THE COURT:  So once I find that the plan is a self-funded

10   insurance plan, automatically it goes to the ERISA category?

11          MR. CONNER:  If it's an ERISA plan.

12          It doesn't necessarily mean that there's a preemption.  It

13   just means that you start with the facts.  If it's not an ERISA plan

14   you never get to this analysis.

15          THE COURT:  So is it a situation where all self-funded

16   plans are ERISA plans?

17          MR. CONNER:  For the most part, Your Honor.

18          There are some things that are accepted out from ERISA,

19   like a church plan, for instance, might be accepted out, but this

20   plan is clearly an ERISA plan.

21          Now, what you then look at is --

22          THE COURT:  So all of the Blue Cross cases -- and I am just

23   saying Blue Cross cases for here -- Blue Cross Florida cases would

24   be an ERISA plan?

25          MR. CONNER:  All of the cases that we have removed to this
```

1  court, Your Honor, yes.  Not all Blue Cross cases that have been

2  filed in state court indicate ERISA plans.

3          So if that's the case, we have not been removed from -- and

4  for instance, one of them is called state group where state

5  employees of Florida are a self-funded group, but that's not an

6  ERISA plan.  That's one that's accepted from ERISA.

7          So you look at the fact that it's ERISA.  And then, you

8  look at whether the Plaintiff -- and in this case you would have to

9  look to a couple of plans back because of the assignments -- but

10 whether the provider involved took an assignment and asserted an

11 entitlement to payment based on that assignment and that is what

12 happened here.

13         That is the thing that gives that provider standing to

14 assert a claim under ERISA because effectively the claim is for

15 benefits under the claim.  You should have paid me the benefits that

16 were available under the plan because I rendered the service to the

17 patient and the patient gave me an assignment and I'm making a claim

18 for whatever that benefit was.  So that would be step number one

19 under that first prong.

20         You, then, go to the second prong about are the claims

21 asserted in state court somehow independent of looking at the plan?

22         There is a significant discussion in the Davila case about

23 what it means to be independent.  There is also a significant

24 discussion in an opinion that was written by Judge Altonaga in

25 *Gables Insurance Recovery v. United Health Care* decided about a year

1  ago, which we've cited in our papers as well, Your Honor, where she

2  goes through and has a very lengthy explanation of the analysis of

3  it independent or not independent.

4         I think the basic way to look at it is, if the claims being

5  asserted are going to implicate an interpretation of the plan, if it

6  requires you to look at the plan and draw decisions from that, then

7  it cannot be independent of the ERISA plan.

8         In the Gables decision, Judge Altonaga looked at

9  allegations in a state court complaint regarding oral contracts,

10 contract implied in fact.  And there are similar claims that are

11 being asserted by the Plaintiffs in this case and found that those

12 are not independent of ERISA.

13        There's a number of other cases that have been decided

14 along the way, Your Honor, that we've cited in our briefs where

15 estoppel claims, for instance, misrepresentation of claims and other

16 types of claims like that that are typical common law claims that

17 have been held to be preempted by ERISA.

18        So that's the analysis that you have to look at to

19 determine is it preempted or not.  If you conclude that it is, then

20 it has been properly removed.  And then, we would proceed as we

21 discussed earlier.  And we think, Your Honor, there's no question

22 that it has been completely preempted here.

23        THE COURT:  So you are saying that these cases would fall

24 because, one, the plan is an ERISA plan;

25        Two, the claims cannot be adjudicated independent of the

1   plan;

2          And three, the original provider through the assignment

3   would be the actual Plaintiff if they came to court.

4          We know they are not actually here because of the

5   assignment provision, but if they could, if they wanted to, they

6   could be on that side of the courtroom?

7          MR. CONNER:  Yes, Your Honor.

8          THE COURT:  All right.  And your argument applies to all of

9   your clients' cases?

10         MR. CONNER:  Yes, Your Honor.

11         THE COURT:  Thank you.  Let me hear from the Plaintiff.

12         MR. RUIZ:  Thank you, Your Honor.  May I approach?

13         THE COURT:  You may.  Give Mr. Conner a chance to gather

14   his papers.

15         MR. RUIZ:  Your Honor, may it please the Court.  John Ruiz

16   on behalf of all Plaintiffs.

17         Judge, the issues of the Motion to Dismiss and the Motion

18   to Remand are intertwined and intermingled because the first

19   analysis that this Court must make is whether or not the Court has

20   jurisdiction over this matter.

21         I beg to differ with opposing counsel both factually and

22   legally and I would like to provide the Court with the facts of this

23   case.  The facts are very simple.  This is a medical provider claim

24   as an intended third party beneficiary.

25         THE COURT:  Well, let's ask this question.  Let's go back

1 because I think you could start saying it is over here and it is

2 really a square dance as opposed to a Polka, but let's just go to

3 the Davila requirement.

4            MR. RUIZ:  Yes.

5            THE COURT:  So is your plan an ERISA plan?

6            MR. RUIZ:  Judge, number one, we don't know if it's an

7 ERISA plan, but that's not determinative of --

8            THE COURT:  Why don't you know that?

9            MR. RUIZ:  Because we haven't been provided any information

10 and we haven't conducted discovery.  The only thing that we know --

11            THE COURT:  But this is where we are.

12            MR. RUIZ:  Yes.

13            THE COURT:  And if I follow Mr. Conner's analysis, normally

14 you would come in and say, Judge, I need discovery, I don't know,

15 but what Mr. Conner is saying is, this area of the law is an

16 exception to the well pleaded complaint analysis that the district

17 court normally goes to.

18            MR. RUIZ:  And that is --

19            THE COURT:  Wait, wait, wait, wait.

20            Because we already know.  We do not need discovery.  This

21 is not a question of fact.  Once you have a self-funded insurance

22 plan that meets the requirement of the statute, fine.

23            And his other argument is, Judge, if for some reason it is

24 not, then we would just get kicked out of the administrative process

25 and you would re-file your complaint and we would start.

1        And then, we would be back at that time with another Motion

2   to Remand and you would say whatever.  Judge, we were there.  We now

3   know.  We have been there, saw it, done it, and got the T-shirt.

4   Send me back across the street to the Eleventh Circuit.

5        MR. RUIZ:  Judge, I understand that, but we need to take a

6   step back because the issue of whether or not this was an ERISA plan

7   isn't determinative of whether or not there's preemption because

8   it's the burden -- the Defendant has the burden to prove several

9   steps, several elements, which they have not met.

10       Notwithstanding the fact that they cannot remove a case

11  from state court and add affidavits and/or a plan when they're doing

12  it within 30 days.  The law is crystal clear --

13       THE COURT:  Let's say I strike it and I only looked at

14  their complaint and your Motion to Remand.

15       MR. RUIZ:  Exactly.

16       And when you look at that, Your Honor, the only thing that

17  you see is that the medical provider who assigned his claim to the

18  party that's bringing this lawsuit did not have an assignment of

19  benefits.  That medical provider is suing as an intended third party

20  beneficiary.  It's a huge difference because ERISA deals with plan

21  participants and/or beneficiaries.

22       What they are trying to extrapolate is stating that a

23  planned beneficiary and/or participant would only fall under ERISA.

24  This claim only falls under ERISA if the medical provider was suing

25  under a derivative right.  A derivative right requires a written

1  assignment of benefits.   There is no written assignment of benefits

2  anywhere in the record.

3          Quite frankly, Your Honor, as an officer of this court,

4  there is no assignment of benefits in writing.   The only thing that

5  they have provided to this Court, which this Court should not accept

6  because it violates multiple rules of statute, procedures.

7          They have, in essence stated, Your Honor, we are going to

8  use an affidavit that doesn't meet the business records exception

9  that we are going to just prepare for the purposes of providing this

10 Court with some notion that this medical provider had an assignment

11 of benefits.

12         THE COURT:  Let me ask this question and maybe can I just

13 understand what you just said.

14         If there was no assignment of benefits provision you would

15 not be here, right?

16         MR. RUIZ:  Yes, we still would be because under the law,

17 the law recognizes a medical provider as an intended third party

18 beneficiary.   That means that if --

19         THE COURT:  Well, a medical provider is not the Plaintiff.

20         MR. RUIZ:  Correct.  But let me explain, Your Honor.

21         Let's say Your Honor goes to a medical provider and when

22 you go to that medical provider, you have your insurance card.  That

23 medical provider contacts that insurance company and confirms that

24 you have coverage and the medical provider does not make you sign a

25 form that indicates that you, as the beneficiary of that insurance

1 policy, of that plan, are transferring those rights to that medical

2 provider.  The medical provider does not need that under the law.

3          A medical provider stands, as recognized by the law, as an

4 intended beneficiary of that plan.  That is a huge difference.  And

5 the reason why it's a huge difference is because we don't have to go

6 to the plan, as they allude to, to determine the issues in this

7 case.

8          The issues in this case will be resolved by something other

9 than the plan.  Why?  Because what they use to determine rate of pay

10 is a computer software that is basically an algorithm that kicks out

11 -- if you go to the doctor and you --

12          THE COURT:  Who promised that algorithm gets created?

13          MR. RUIZ:  That's my question.  That's what we're going to

14 find out during the course of the case.  There is no basis --

15          THE COURT:  But would not that algorithm, in and of itself,

16 the existence of it require an interpretation of what a plan is

17 supposed to do?

18          MR. RUIZ:  No, Your Honor.  And the reason why --

19          THE COURT:  Well, how do you ever get to discuss the

20 algorithm without discussing the plan?  It just got delivered from

21 heaven?

22          MR. RUIZ:  I'll tell you why.  Because what the insurance

23 industry does is that doctor's bill is $300.  And they will say,

24 okay, we know you provided treatment, but we don't accept $300 as

25 the rate of pay.  We think that $180 is what you should have

1  charged.  There's no reason for it.  They just decided to do it.

2  That's the reason why we're in court today.  They have no basis to

3  say we only are going to acknowledge $180.

4          It's very similar to an attorney charging a client $300 an

5  hour and somebody, without any real evidence or facts, determines

6  you know, what, I think $300 is too much.  I'm going to pay $180

7  just like you would at an attorney's fees hearing.

8          THE COURT:  It happens all the time.

9          MR. RUIZ:  You bring experts in to determine what the rate

10  is in the community.  It has nothing to do with the plan, but even

11  if it had to do --

12          THE COURT:  The experts in the community comes downstream.

13  They come after the litigation has occurred.

14          MR. RUIZ:  Correct.

15          THE COURT:  And the parties say, yeah, I know that they

16  charge is $300 an hour.  We just do not think even though that is

17  what they contracted that is what their retainer agreement says.  We

18  do not think our community thinks -- our legal community -- thinks

19  that $300 is right.  But the contract that you had with your client

20  was to provide them legal services at $300.  You are now coming into

21  court saying I want attorney's fees under my contract.

22          MR. RUIZ:  And that's a great example, Your Honor, because

23  you know why?  Because their agreement, their plan, doesn't have a

24  rate.  It doesn't say if you go to the doctor we pay you X and

25  that's the reason why --

1         THE COURT:  But I am willing to bet -- I don't know if Mr.

2  Conner may be able to clear this up for me in a second -- that there

3  is something in their plan that says something like you are in this

4  plan, we love you, we want to provide health care benefits for you,

5  but we determine the rate of pay for certain services.  Whether it's

6  algorithm, the moonrise, whatever.  That is what we are going to do

7  and that is in our plan.

8         MR. RUIZ:  Judge, I want to still take a step back because

9  assuming all that to be true, which is not the way the system works,

10 but we are putting the cart before the horse.

11        The reason why, the first thing that they have to prove is

12 that there is a written assignment of benefits.  There is none in

13 the record.  And then, on top of that, they have to prove that this

14 case involves a right to pay as opposed to a rate of pay.  So they

15 have to meet both of those conditions before this Court could

16 exercise jurisdiction.

17        And then, in addition to that, they have to prove that

18 there are no independent state court actions that are available

19 because there's complete preemption.  There's a big difference

20 between complete preemption and what they call conflict preemption.

21 Those are distinct.

22        They can assert affirmative defenses in the state court

23 cases.  I'm sure they will.  This case is not a case that should be

24 before Your Honor.  Not because we don't want it to be here, Judge,

25 but this is just not a preempted case.

```
 1          THE COURT:  I have to admit, Counsel, that it may be that

 2   you know, the fact this is a Monday morning for me and not a Tuesday

 3   morning, I am having a really hard time seeing how you get around

 4   the Davila criteria that Mr. Conner laid out.

 5          MR. RUIZ:  There is no standing, Judge.  It is straight out

 6   that the first element --

 7          THE COURT:  What about the statement of claim?  Doesn't

 8   that include an assignment of benefits?

 9          MR. RUIZ:  No, there is no assignment.

10          That's the whole reason why they're -- this medical

11   provider is not pursuing this claim through -- see, Judge, we can't

12   confuse the assignment that is given to the entity bringing the

13   action with the assignment that has to be obtained from the planned

14   participant and/or beneficiary.

15          The claims and rights that the medical provider owns are

16   called intended third party beneficiary rights, which means that

17   there is no written assignment of benefits.  On that alone they

18   fail.

19          If they were to bring you today -- which doesn't exist so

20   it's impossible -- for them to bring that this provider has a

21   written assignment of benefits with this patient on this case

22   number, then it would be end of story, but they don't have that

23   because it doesn't exist.

24          Then, they would have to take the next step and show this

25   Court that the basis upon why they have complete preemption is
```

1  because, A, they have a written assignment of benefits, and B, they

2  have a right of payment versus a rate of payment.

3          So Judge, we have to keep in mind that it's their burden.

4  It is not my burden to show the Court why they haven't met their

5  elements.  It's their burden to prove that they have met the

6  elements of the Davila test.  They don't meet them.

7          In the *Riverside Medical Associates v. Humana case*, which

8  is Case Number 06 --

9          THE COURT:  Counsel, slow down a little bit.  You want the

10  court reporter to get all of this down.

11          MR. RUIZ:  I apologize, Judge.  It's the adrenalin.

12          Case Number 06-61490, Judge Cohn opined and ruled on a case

13  almost identical to this and stated, unequivocally, you have to have

14  a written assignment of benefits.

15          Just on that alone the case fails because there is no

16  written assignment of benefits they can't have standing.  And as we

17  all know, standing is one of the most -- the biggest prerequisite to

18  bringing a case before a court, if you don't have standing.

19          So your question a while ago was very good, actually.  The

20  question is, could the medical provider have been sitting over there

21  and suing these insurance companies?  The answer is unequivocally,

22  yes, but it's not because it's a written assignment of benefits.

23  It's because they are intended third party beneficiaries.

24          However, they would not be in this court.  They would be in

25  the county court with all the other cases that they didn't remove

1    are still located at.  The reason why is because the law has already

2    evolved in such a way that medical providers are intended third

3    party beneficiaries of no-fault policies, of medical insurance

4    policies, of ERISA policies.  That's a solid black letter law.

5    There is no way around it.

6           So they cannot choose the manner in which we proceed with

7    our cases.  And quite frankly, if I was to have pled this case and

8    stated that the medical providers took an assignment of benefits,

9    then they would file a Motion to Dismiss saying, well, where is your

10   assignment of benefits?  And since I don't have one, the Court would

11   have to dismiss the case.

12          So you first have to jump through the hurdle of standing.

13   They can't.  It's not there factually and it's not there legally.

14   And it is very important, Judge, that we keep in mind that they have

15   added to this record, plans and affidavits, which are impermissible

16   by statute and by pure violation of the hearsay rules they haven't

17   met the business records exception.  Even assuming arguendo that

18   this Court would want to let them use these affidavits, they can't.

19          The Lowery case, which is the case that specifically states

20   and pretty much governs.  It's an Eleventh Circuit appellate case

21   and it governs pretty much what should happen here.  In that case,

22   the Court stated, specifically, there are two ways to remove a case.

23   You either remove it within 30 days or you remove it after 30 days

24   and the Court goes on to state:

25          "The inquiry at the heart of the case in which the

1  Plaintiffs challenge..."

2         Which we are.

3         "... removal by filing a timely Motion to Remand under 28

4  U.S.C.S. 1447(c) in assessing whether removal is proper in such a

5  case, the district court has before it only the limited evidence

6  available when the Motion to Remand is filed.

7         The notice of removal and accompanying documents if that

8  evidence that is insufficient to establish that removal was proper

9  or that jurisdiction was present, neither that defendants nor the

10 court may speculate in an attempt to make up for the notice's

11 failure.  The absence of factual allegations pertinent to the

12 existence of jurisdiction is dispositive.  In such absence the

13 existence of jurisdiction should be defined by looking to the

14 stars."

15        The Court, then, goes on to distinguish between removing

16 within 30 days and removing after 30 days.  And the Court, in

17 essence, states that if you are removing within 30 days, a case may

18 be removed on the face of the complaint if the Plaintiff has alleged

19 facts to establish jurisdiction.  We haven't alleged facts to

20 establish jurisdiction.  That's why the Court does not have

21 jurisdiction.  We can go a step further.

22        If you do it after 30 days, then the Court can take into

23 consideration if a case becomes removable only under three

24 conditions:  One, that there was an amended complaint, or B, a

25 motion, order, or other paper, which the Defendant must have

1  received from the Plaintiff where the Defendant could first

2  ascertain jurisdiction.

3       We haven't sent anything to them where they can ascertain

4  jurisdiction.  There is no paper to ascertain jurisdiction.  The

5  only deviation to this type of case law is when you're talking about

6  jurisdiction when the amount in controversy is at issue.  They are

7  trying to remove these cases by asserting that there is federal

8  preemption.  Federal preemption is a very limited doctrine whereby

9  the Court must exercise that with great caution.

10       Judge, the facts just aren't here.  The law isn't on their

11 side.  That's just the way that it is.  We don't make up the facts.

12 The facts aren't there.  They could have done other things before

13 having come to this Court.

14       The facts of this case as pled in the complaint, which this

15 Court is confined to look at, states that these patients went to

16 this doctor.  They contacted this insurance company.  The insurance

17 company gave the approval and gave them a number to treat the

18 person.  And there's nothing about this claim that has anything to

19 do with a written assignment of benefits.

20       These defendants, with their counsel, basically created

21 state law causes of action because of their conduct.  That's what

22 all these causes of action are about, intended third party

23 beneficiaries.  I, detrimentally, relied.  You told me this person

24 had coverage and you were going to pay me.  I stand in my own shoes.

25       The medical provider didn't contract with the insurance

1  company.  The medical provider didn't sign the form that says, I,

2  Mr. Jones will be covered as a planned participant and/or

3  beneficiary.

4          That is why the law requires that when that happens, Your

5  Honor, the medical provider must take a written assignment from that

6  planned participant or beneficiary so that he, himself, or she,

7  herself has what is called derivative standing.

8          There is no derivative standing.  Derivative standing only

9  applies when you have a written document.  If they show you, Judge,

10  when they come up here, not a little computer printout that says,

11  wow, we sometimes take assignments.  No, it's a legal document.

12          We could not come into court and Your Honor is well aware

13  that there is no plaintiff that can come into court and state

14  verbally that somebody gave them an assignment.  It doesn't exist.

15          You can't come in here and walk into court and say, Your

16  Honor, by way the way, the gentleman over there that got treated for

17  his injuries in a car accident he told me that was his word for it.

18  That's what they're saying.

19          They're asking this Court to take their word for it that

20  this doctor said that he was going to take these people's words.

21  That doesn't apply in the law and that's why all these cases stand

22  for that proposition.  If you go further into this, you have to have

23  benefits that the Plaintiff is seeking that are under the plan.

24          See, when you have a promissory estoppel claim and when you

25  have a breach of an oral contract, it's simple.  It goes even

1    further, Judge.  These defendants aren't even the actual insurance

2    company.  They're not the actual plan.  So they are trying to take

3    leaps and bounds and say, Your Honor, we got sued.

4         We're the Defendant, but we only administer benefits.  We

5    are not the one that pays the benefits.  It doesn't come out of our

6    pocket.  Yet, they want you to take the position that this analysis

7    that we have to conclude here has everything to do with the plan and

8    that you could not resolve this case.

9         As a matter of fact, Judge, in one of the other cases with

10   opposing counsel, opposing counsel stated coverage was terminated

11   before the services were rendered and they still removed the case.

12   Coverage was terminated.  That means there's no plan.  There's no

13   plan to look at, but they still removed it.

14        So Judge, what you already have here is a tug of war.  The

15   tug of war is we're going to try to bombard this Plaintiff with as

16   many removal notices as we can so that they can't have their day in

17   court.  And quite frankly --

18        THE COURT:  How would that be the case that you wouldn't

19   have your day in court?

20        MR. RUIZ:  Because they want to remove these cases over

21   here because, then, under the ERISA plan you have to go through

22   administrative procedures and you have to jump a bunch of hoops and

23   hurdles, which is fine.  The planned participant or beneficiary may

24   have signed up for that.  And if they have an issue as to their

25   coverage that's where those cases should be, but that's not where we

1  are.  We are an intended third party beneficiary.

2          THE COURT:  No, I do not think that is what they are

3  saying.  I could be wrong and maybe I am reading something into it

4  that isn't.  It is that before you get here you've got to go through

5  your administrative remedies.  I do not know.

6          And that record is the record that I, or any of my

7  colleagues who would have this case, would use to determine whether

8  or not you have a cause of action and are entitled to any damages.

9  That is my understanding.

10          MR. RUIZ:  I disagree, Your Honor, and let me tell you why.

11          Number one, Judge King and Judge Moore have already

12  remanded cases identical to this.  Unfortunately, as lawyers we're

13  supposed to give you the good and the bad cases.  Opposing counsel

14  only gave you the one judge that has --

15          THE COURT:  When you said that Judge Moore had remanded

16  cases, would you have been counsel record in these types of cases?

17          MR. RUIZ:  No.  The identical cases in the Gables Recovery

18  cases were remanded.  I believe, if memory serves me correctly,

19  there were about four or five of them.  And only one, Judge Altonaga

20  found complete preemption, which we just filed a motion to rehear

21  our cases because, apparently, she seen what was going on and she

22  gave us the right to have a status conference to discuss these

23  issues but --

24          THE COURT:  Because I was about to ask is I thought that

25  previously Judge Altonaga had said -- and I am using said in the

1  royal said and not that she specifically said it -- that these cases

2  should be determined on administrative record before they come to

3  court.

4          Am I incorrect in my understanding?

5          MR. RUIZ:  That is correct.

6          It was on one case before we even really had a chance to

7  file our papers.  She did it because she had ruled on a case a year

8  before that was a Gables Recovery case and she's the only judge that

9  has found preemption.

10          Judge King, which we just had a status conference before

11  and one of the opposing lawyers said, well, we could use the

12  affidavit.  And Judge King said really?  You could use an affidavit?

13  I don't think so.  File your motion in opposition to the remand and

14  we will have this issue resolved.  So right now --

15          THE COURT:  So Judge King has not resolved.  He merely

16  questions the use of the affidavit?

17          MR. RUIZ:  Judge King resolved it in the Gables Recovery

18  cases.  Those decisions were final a year ago.

19          Judge Moore kicked all these cases back down and remanded

20  them to state court.  And the record on those cases was far worse

21  than the record in our cases, as far as the facts and the law is

22  because it favors our position a lot more than the Gables Recovery

23  cases.

24          In the Gables Recovery cases they didn't contest what you

25  could use to remove the case.  We're, point blank, asking Your Honor

1  to disregard under the Lowery case the plan to disregard the

2  affidavit and, therefore, you don't get to the plan.  You don't get

3  to the questions that Your Honor was asking.  Because the first

4  determinative step in determining whether there is complete

5  preemption is where they fail.  There is no written assignment of

6  benefits.  That's step number one.  That's standing.

7       And even if you had a written assignment of benefits, which

8  by the way, the courts in the Gables case found that there was a

9  written assignment or went through that step.  They still found and

10 remanded the case back down because they indicated it was a rate of

11 pay dispute as opposed to a right of pay dispute.

12      And that, in and of itself, also destroys what is called

13 complete preemption.  They, then, would have to go to another step

14 and conclude that every single cause of action that we have pled,

15 has something to do with the plan.

16      Now, what they do is they go through every single portion

17 of the complaint that says, or states, health insurance plan.  And

18 that's pretty much all they base their entire argument on.  Just

19 because it says that there's a health insurance plan does not mean

20 that you are governed by that.

21      I will you an example, Your Honor.  Let's assume that Your

22 Honor is insured through an insurance company.  And for some reason

23 or another, you end up having a car accident and somebody gets

24 slightly injured and somebody tries to make a claim against your

25 insurance company.

1        That person whom you were involved in an accident with is
2  not limited to the terms of your policy with that insurance company.
3  That person has rights to pursue causes of action that have nothing
4  to do with your insurance policy with your automobile.
5        It is Your Honor that would have to pursue any claims
6  against the automobile insurance company if they don't meet the
7  requirements under the law as it pertains to what they're supposed
8  to cover you for.
9        So really what they should do, the insurance industry, the
10 defense lawyers, is the doctor as an intended third party
11 beneficiary has sued because he or she has rights that are separate
12 and apart from the person that signed for that policy.
13       If they had any issue, what I think they should do, they
14 should file a declaratory action against the patients that having
15 nothing to do with us.  Let them litigate that separate and apart
16 and let them tell their planned participant or planned beneficiary.
17       By the way, even though somebody called and we gave a
18 number and we authorized treatment, we're not going to satisfy that
19 debt that we created because there's a quid pro quo.  The doctor
20 provided treatment and the patient received treatment, which by the
21 way, is whom the insurance company is supposed to indemnify.
22       So Judge, when you really break down the real true elements
23 of this case, and the Court must really, really confine itself to
24 the four corners of the complaint.  And remember, it is completely
25 their burden and it's a very high burden to meet.  They have just

1    not met their burden by any stretch of the imagination.

2            THE COURT:  Let me hear from Mr. Conner.  I have a couple

3    of specific questions to ask.

4            MR. RUIZ:  Thank you, Your Honor.

5            THE COURT:  Mr. Conner, what about the issue of no written

6    assignment of benefits that would get you out of the whole standing

7    issue?

8            And, then, the issue that Mr. Ruiz brought up, the right

9    versus the rate.  And third, if I -- too many questions.

10           If I agree with Mr. Ruiz and say strike your affidavit and

11   all the other things, are we here and it doesn't go back to state

12   court?

13           MR. CONNER:  What was the first one, Your Honor?

14           THE COURT:  The written assignment issue.

15           MR. CONNER:  The written assignment issue.

16           Okay.  Your Honor, we have a substantial disagreement about

17   that issue, as you can imagine.

18           You know, there are --

19           THE COURT:  One, do you have one?  And if you don't, is

20   there an exception?  And three, what is it that would keep you here

21   on our rule?

22           MR. CONNER:  Your Honor, the answer to whether there is a

23   written assignment is yes.  There are two things in this record

24   which, unequivocally, show what we are talking about.  And let me

25   give you a little bit of context here.

34

1    This case is not the first case that was filed on behalf of

2    Dr. Blanco.  Originally, there was a case filed in state court

3    called Olivia Blanco versus Blue Cross Blue Shield of Florida.  And

4    the John Doe patients as assignors and patients of Olivia Blanco,

5    Jr.

6    That case, that complaint in that case was amended to name

7    La Ley Recovery Systems as an assignor of the doctor.  And we filed,

8    yesterday, a copy of the complaint from that case as well as the

9    original complaint and the amended complaint as under a notice of

10   filing in this case and the other cases that were set for status

11   conference, where they specifically plead.

12   And we've laid it out in our opposition papers that we

13   filed yesterday, Your Honor, and I know you've been showered with

14   lots of filings from us, but they specifically plead in Paragraph 18

15   of the complaint:

16   "In return for providing medical services, Blanco accepted

17   an assignment of benefits from its patients entitlement to collect

18   directly from the insured and/or as otherwise a third party

19   beneficiary recognized by Florida law.  See Exhibit A assigned."

20   And if you look at Exhibit A it says assignment of benefits

21   and it's a typical assignment that you see in these types of cases.

22   There are multiple other allegations throughout that complaint where

23   they talk about the routine practice of Dr. Blanco to take an

24   assignment of benefits when the patient comes in for service, which

25   is as you can imagine is routine for the vast majority of medical

1  providers out there.

2        The second thing that's in the record that shows the

3  assignment, Your Honor, is an affidavit that we filed this morning.

4        THE COURT:  But Mr. Ruiz is saying I should strike that.

5        MR. CONNER:  Well, we'll get to that question, Your Honor,

6  but the affidavit that we filed this morning -- and frankly, we

7  didn't know that we would be confronted with a complete denial that

8  there had ever been an assignment.

9        The affidavit that we filed this morning shows that Dr.

10 Blanco, what he would do routinely and what he did in this case,

11 after rendering the service he would electronically submit a claim

12 form.  And on that claim form there's a box, do you have an

13 assignment or not and he says yes.

14       Now, either when that claim form was filed it was truthful

15 or if Mr. Ruiz is saying there was not, in fact, an assignment it

16 was a fraudulent medical claim.  He filed that for the very purpose

17 of getting paid whatever the benefit was that was available.  So

18 there is ample evidence in this record that an assignment was

19 clearly made and Dr. Blanco filed a claim indicating that he had an

20 assignment.

21       The case law indicates that that is sufficient to give

22 standing to the provider to proceed under ERISA those three cases

23 that we talked about and specifically Connecticut Dental and Borrero

24 deal with that issue of standing and they talk about the filing of a

25 claim indicating an assignment of benefits and that's sufficient for

1  this analysis.  So that's number one.

2       Number two, this argument -- and frankly, this is the first

3  case and I've been doing this for a while where I've been confronted

4  with the argument that you can't file an affidavit to show that an

5  ERISA plan is involved.

6       The routine practice, Your Honor, when you remove an ERISA

7  case is to file an affidavit and put the plan in evidence so that

8  Your Honor knows it's ERISA plan and that's what we did in this

9  case.  There is an affidavit of Annette Norman that we filed with

10 the removal and attached to that is the summary plan description.

11 And on Page 10 of that summary plan description it talks about ERISA

12 rights that this is an ERISA plan.

13       Beyond that, Your Honor, there is case law in the Eleventh

14 Circuit in this context.  Not in other contexts that Mr. Ruiz is

15 citing cases to, but in the ERISA context.  We have cited those

16 cases on Page 2 of our Motion to Dismiss.  There is a footnote one.

17 There are a number.  *Brooks v. Blue Cross Blue Shield of Florida,*

18 Eleventh Circuit, 1997.  Citing *Venture Associates Corporation v.*

19 *Zenith Data, Deerman v. Federal Home Loan Mortgage*, et cetera.

20       And as I said, it is the routine practice to file the

21 affidavit.  Because if you think about how preemption works, it

22 converts the state law claim into a federal claim and you don't go

23 by the well pleaded complaint rule.  If you went by the well pleaded

24 complaint rule, you might not know that there's an ERISA plan

25 involved at all when you just look at that complaint in state court

1  because it alleges state law causes of action.

2          The way the law operates in this area, affidavits,

3  declarations, other evidence is clearly allowed to establish the

4  fundamental facts that support whether the case is removal or not.

5  The case law is very clear about that.

6          THE COURT:  So you are saying that --

7          MR. CONNER:  It doesn't deal with ERISA.

8          THE COURT:  So you are saying is there an exception in

9  ERISA type insurance cases that were not bound by the face of the

10 complaint?

11         MR. CONNER:  It is, Your Honor.

12         There are very few areas of law where you do not go by the

13 well pleaded complaint rule, but ERISA is one of them.

14         The Brown case, out of the Eleventh Circuit, talks about it

15 in a lot of detail as well.  It's a little bit of an older case, but

16 the three main cases that we've discussed this morning, they talk

17 about it as well.

18         And as I said, we cited the case law in our Motion to

19 Dismiss at the very beginning there that addresses the fact that you

20 can use evidence to show the basis for removal.  It doesn't make any

21 sense otherwise.

22         So now, I think the third question was this distinction

23 that Mr. Ruiz is arguing about, the right of payment versus the rate

24 of payment.  We already talked about that?

25         THE COURT:  Yes.

38

1           MR. CONNER:  So that is a very nuanced distinction.  It

2    does not mean that any time a party payment has been made on a claim

3    that it suddenly becomes a rate of payment issue.

4           That distinction is one that has been enunciated by courts

5    under the cases where the provider, for instance, has a separate

6    contractual agreement with the insurer.  And they want to proceed

7    under the separate contractual agreement and not under ERISA where

8    you have to bring in an interpretation of the plan.  That

9    distinction has been used in those cases.  That's not this case.

10          This provider is not in the network with Blue Cross Blue

11   Shield of Florida.  In addition to that, there are -- it's a mixed

12   bag of cases where claims were denied and some claims were paid.

13   And that's the very type of factual scenario that the Borrero case

14   addresses where there's a hybrid type of situation where there's

15   complete preemption.

16          We've cited in our brief in opposition to the Motion to

17   Remand, Your Honor, a case that I have litigated before Judge

18   Middlebrooks called *Fox v. Blue Cross.*  And that case illustrates

19   one of the issues that is being argued here and that is the payment

20   of what is called an allowed amount under the policy to an

21   out-of-network provider.  That case was under ERISA.

22          Judge Middlebrooks had to look at the ERISA plan to

23   determine if that was properly calculated.  He concluded that it

24   was.  That went up to the Eleventh Circuit.  The Eleventh Circuit

25   wrote an opinion on it and affirmed it.  That is a perfect example

1  of the type of issue that we're dealing with in this case.  And that

2  does not fall within the distinction that Mr. Ruiz wants to argue.

3          THE COURT:  All right, Counsel.

4          If you all will give me about ten minutes, I am going to

5  return.

6          MR. RUIZ:  Could I get a brief response when you return?

7          THE COURT:  I think I understand the issues, Counsel.

8  Thank you.

9  (Recess.)

10         THE COURT:  Counsel, for better or for worse, when you come

11  before a federal judge you deal with the fact that each time you

12  wonder where we are.  So for the past few days I have had to cram

13  down ERISA.  And I am certain that every one of you in this

14  courtroom is much more familiar with this than I am, but for

15  purposes of trying to decide these cases, I have had to become

16  familiar.

17         So let's start with what I think the first issue is of

18  whether or not I can deal with the Plaintiff's Motion to Remand --

19  the Defendants -- excuse me.  The defendant's Motion to Dismiss as

20  it is presently because what I have is the Plaintiff's Motion to

21  Remand.  The defendant's Motion to Dismiss.

22         The Plaintiff argues to me, Judge, we should go back to

23  state court just on our papers alone because that is what the

24  removal cases say.  And the Defendant says, no, Judge.  There is a

25  specific line of law about remand, preemption, and ERISA.  And that

1  is where I have kind of had to take my learning steps over the past

2  few days.

3        I think that Mr. Conner's analysis of preemption, well

4  pleaded complaints, and ability to attach these to the motion to

5  deny remand and dismissal is correct.

6        The ERISA law is outside of the well pleaded complaint

7  area.  And logically, that makes sense because without the ability

8  to attach a plan and things of that nature, an artfully pled

9  complaint could merely move a case that substantively smacks ERISA

10 to state court.  And we know that by virtue of the law ERISA claims

11 are entirely preempted by federal law.

12       So first of all, I am saying for the record, ERISA well

13 pleaded complaint.  Two, with the acceptance of the well pleaded

14 complaint doctrine, I can look at Defendant's attachments.  And

15 because I can look at Defendant's attachment, Plaintiff's Motion to

16 Strike on that level is denied.

17       So now that I have passed those of what I think of as

18 procedural substantive hurdles, where does that leave us in terms of

19 the complaint filed in this case?

20       First, given the evidence before me, the self-funded plans

21 come under ERISA.  Because the self-funded plans come under ERISA,

22 all of those cases are preempted and should be in federal court.  So

23 on that level the Plaintiff's Motion to Remand is denied.

24       What are we left with now that the Plaintiff's Motion to

25 Remand is denied?

1          And what Mr. Conner has asked the Court to do is, Judge,

2 look at what the ERISA plan says you are supposed to do and that is

3 you have to exhaust.  You have to go back and show that in your

4 complaint and proceed from there.

5          So first of all, I am dismissing the Plaintiff's complaint.

6 And this will apply to all of them, even though the ones that are

7 dismissed, the law is the same, the funds are the same, the case is

8 the same, there is no reason to drag this on.

9          So I am dismissing the Plaintiff's complaint for failure to

10 state a claim on the grounds that the claims are totally preempted

11 by ERISA.  And I am further dismissing the complaint because the

12 Plaintiffs have failed to allege exhaustion of administrative

13 remedies and failed to exhaust administrative remedies.

14          So where does that leave the Plaintiff?

15          That means that they are free to file showing that they

16 exhausted or wait to file after they have exhausted their remedies.

17          So for the record and for the reasons that I have just

18 stated, the following cases will be dismissed for failure to exhaust

19 an ability to replead.  14 and the following case numbers:  22919,

20 23303, 23431, 23443, 23499, 23534, 23544, 23572 and 23684.

21          An order consistent with my oral ruling will be issued

22 later.

23          Thank you very much, Counsel.

24          (Thereupon, the proceedings concluded at 12:20 p.m.)

```
                            CERTIFICATE


            I hereby certify that the foregoing transcript is

an accurate transcript of the proceedings in the above-entitled

matter.




10/22/14                        Bonnie Joy Lewis,
                        Registered Professional Reporter
                           CASE LAW REPORTING, INC.
                           7001 Southwest 13 Street,
                        Pembroke Pines, Florida 33023
                               954-985-8875
```